**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

RONELD LOGORY,

    Plaintiff,

      v.

THE COUNTY OF SUSQUEHANNA,

    Defendant.

CIVIL ACTION NO. 3:09-CV-1448

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Plaintiff's Motion for Class Certification.  (Doc. 30).  Roneld Logory ("Plaintiff") seeks class certification on behalf of a class of others similarly situated  against the County of Susquehanna.  Plaintiff specifically maintains that (1)  the Jail's delousing policy is unreasonable under the Fourth Amendment; and (2) the Jail's delousing policy violates the detainees' Fourteenth Amendment rights to refuse unwanted medical treatment.  (Doc. 42 at 4).  This action is seeking declaratory and injunctive relief against these delousing procedures as well as compensatory damages.

### I. Background

Roneld Logory was arrested for a misdemeanor offense on June 19, 2008.  He was detained at Susquehanna County Correctional Facility ("SCCF") where he was subjected to a strip search and a delousing agent upon his arrival.  As a result of that treatment, Plaintiff filed his Complaint on August 24, 2009, complaining that SCCF had implemented "a blanket policy of delousing, showering and strip-searching all individuals who enter the custody of the [SCCF] regardless of the nature of their charged crime and without the presence of reasonable suspicion to believe that the individual was concealing a weapon or contraband."

(Doc. 1 at ¶ 24).  Plaintiff initially sought to certify a class action comprised of "[a]ll persons who have been placed into custody of the SCCF after being charged with misdemeanor offenses, summary offenses, traffic infractions, family court violations and/or civil commitments and were strip-searched upon their entry into the SCCF."  (Doc. 1 at ¶ 9).

On September 21, 2010, the Third Circuit held that blanket search policies of arrestees held over in prison populations were inherently reasonable and thus not violative of the Fourth Amendment.  *Florence v. Bd. of Chosen Freeholders of Burlington*, 621 F.3d 296, 311 (3d Cir. 2010).  In light of this holding, Plaintiff abandoned his class claim as pertaining to the strip-search policies, but instead proposed two new classes for certification:[1]

> 1) The Fourth Amendment Class—All persons who have been placed into custody of the Susquehanna County Jail as pre-trial detainees who were deloused upon their entry into the Susquehanna County Jail. The Class period commences on or about July 24, 2007 and extends to the date on which the Defendant is enjoined from, or otherwise ceases, enforcing its unconstitutional policy, practice and custom of delousing detainees absent reasonable suspicion. Specifically excluded from the Class are Defendant and any and all of its respective affiliates, legal representatives, heirs, successors, employees or assignees.

> 2) The Fourteenth Amendment Class—All persons who have been placed into custody of the Susquehanna County Jail after being sentenced or as pre-trial detainees who were deloused upon their entry into the Susquehanna County Jail. The Class period commences on or about July 24, 2007 and extends to the date on which the Defendant is enjoined from, or otherwise ceases,

---

[1]Plaintiff offers these amended class definitions through his reply brief.  (Doc. 42).  This is "procedurally appropriate, as the Court retains jurisdiction to modify the class until there is a decision on the merits."  *Jordan v. Commonwealth Fin. Sys.*, 237 F.R.D. 132, 136 n.3 (E.D. Pa. 2006) (citing Fed. R. Civ. P. 23(c)(1)(C)); *Gulino v. Bd. of Educ.*, 201 F.R.D. 326, 330 n.3 (S.D.N.Y. 2001) (allowing a class definition that was proposed in the plaintiffs' reply brief "in response to some of defendants' objections found in defendants' opposition briefs.").

enforcing its unconstitutional policy, practice and custom of delousing detainees absent reasonable suspicion. Specifically excluded from the Class are Defendant and any and all of its respective affiliates, legal representatives, heirs, successors, employees or assignees.

(Doc. 42 at 4).

Specifically, pursuant to 42 U.S.C. § 1983, Plaintiff is seeking declaratory relief that the SCCF delousing policies are unconstitutional, injunctive relief against the continuance of these policies, and compensatory damages for himself and other class members, as well as attorney fees and costs.

## II. Discussion

### A. Legal Standard

Rule 23 of the Federal Rules of Civil Procedure provides for class action certification. Under Rule 23(a), class certification may be appropriate if the following requirements are met:

> (1) the class is so numerous that joinder of all members is impracticable [("numerosity")], (2) there are questions of law or fact common to the class [("commonality")], (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [("typicality")], and (4) the representative parties will fairly and adequately protect the interests of the class [("adequacy of representation")].

Fed. R. Civ. P. 23(a); *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 183 (D.N.J. 2003). Once the requirements of 23(a) are satisfied, the class may be certified if at least one of the three subsections of 23(b) are met. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 n.6 (3d Cir. 2008).

A court may certify a class action only if it "is satisfied, after a rigorous analysis, that the [requirements of Rule 23] have been satisfied." *Gen. Tel. Co. of the Sw. v. Falcon*, 457

U.S. 147, 161 (1982).  In weighing the merits of a class certification, a "district court must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties."  *Hydrogen Peroxide*, 552 F.3d at 307. Specifically, a certifying court must find that each element of Rule 23 is met by a preponderance of evidence, and "must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits--including disputes touching on elements of the cause of action."  *Id.* at 305.  This reflects the notion that Rule 23 is more than a "mere pleading standard," and those "seeking class certification must affirmatively demonstrate his compliance with the Rule."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

## B.  Certification Under Rule 23(a)

Here, the Plaintiff seeks to certify both classes under Rule 23(b)(3), or (b)(2) in the alternative.  Therefore, as the moving party, the Plaintiff bears the burden of first showing that the requirements of Rule 23(a) are satisfied, and then demonstrating that the elements of subsections (b)(2) or (b)(3) are met.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997); *Behrend v. Comcast Corp.*, No. 10-2865, 2011 WL 3678805, at *5 (3d Cir., Aug. 23, 2011).

The "threshold requirements" of Rule 23(a) are referred to as (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  *Amchem*, 521 U.S. at 613. Each requirement will be evaluated in turn.  For the reasons stated below, the Court will find each element of Rule 23(a) satisfied as to the Fourteenth Amendment Class, but will decline to certify the Fourth Amendment Class.

**(1.) Numerosity**

Numerosity under Rule 23(a)(1) requires only that the class be "so numerous that joinder of all members is impracticable." Unfortunately, "[n]o single magic number exists satisfying the numerosity requirement." *Florence v. Bd. of Chosen Freeholders*, No. 05-3619, 2008 U.S. Dist. LEXIS 22152 at *18 (D.N.J. Mar. 20, 2008) (citation omitted). However, the Third Circuit has opined that while there is technically no minimum class size, "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).

All SCCF detainees who were strip searched were subjected to delousing procedures. Defendant admits that its "delousing procedure is, in fact, part of its strip search process." (Doc. 49 at 14). Therefore, it is necessary to determine how many such detainees were strip searched over the period in question in order to determine whether numerosity is satisfied in the instant case. From the record, it is unclear how many detainees actually entered the SCCF since July 24, 2007, much less how many of those were subjected to a strip search. However, it is clear that between June 2007 to March 25, 2010, at least one hundred and seventy (170) pre-trial detainees charged with summary offenses and misdemeanors were strip searched out of five hundred and seven total pre-trial detainees over that period. (Doc. 38-3 at 2-3).

As the Fourth Amendment Class would be comprised of pre-trial detainees who were deloused upon entry to the jail, the Court concludes by a preponderance of the evidence that this number easily exceeds forty (40) and thus numerosity is satisfied. Moreover, as the Fourteenth Amendment Class would be even broader in including pre-trial detainees as well

as sentenced prisoners, it is further apparent that this Class also easily satisfies numerosity.

Plaintiff further avers that traditional joinder would be especially impractical in this action as "Class members are likely dispersed over a large geographic area, with some members residing outside of Susquehanna County and this Judicial District.  Furthermore, many members of the Class are low-income persons, may not speak English, may not know of their rights and likely would have great difficulty in pursuing their rights individually." (Doc. 1 at 4).  The Court agrees with this assessment and finds that it only bolsters a finding that numerosity is satisfied.  Therefore, as the population of these classes well exceed the lower bounds of numerosity, and as regular joinder rules would be impractical, the numerosity requirement of  Rule 23(a) has been easily satisfied for both potential classes.

### (2.) Commonality

Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008).  This "does not require an identity of claims or facts among class members; rather, the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Ins. Brokerage Antitrust Litigation*, 579 F.3d 241, 264 (3d Cir. 2009) (quotations omitted).  As "the requirement may  be satisfied by a single common issue, it is easily met . . ." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

However, the Supreme Court has recently opined that commonality is not the mere existence of a classwide question, but instead the potential for a "classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  "What matters to class

6

certification . . . is not the raising of common 'questions' -- even in droves -- but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (citing Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L. Rev. 97, 132 (2009)).

### (a) The Fourth Amendment Class

The Fourth Amendment class seeks to represent solely pre-trial detainees who were subjected to delousing upon their entry to the SCCF.  Specifically, Plaintiff is attempting to enjoin this delousing as an impermissible Fourth Amendment search.

Reasonableness under the Fourth Amendment considers "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).  As delousing at the SCCF is predicated on an inmate's being strip searched, Plaintiff argues that such delousing was unreasonable in that a determination of whether a strip search should be conducted on a pre-trial detainee has no bearing on whether a particular individual is a carrier of lice.

Plaintiff argues that the recent decision in *Florence v. Board of Chosen Freeholders of Burlington* should have no effect on the viability of the Fourth Amendment Class.  621 F.3d 296 (3d Cir. 2010).  There, the Third Circuit held that strip searches of non-indictable arestees, absent any individualized suspicion, was constitutional under the Fourth Amendment.  *Id.* at 311.  Almost identical to the instant case, the searches considered in *Florence* also employed a delousing component.  *Id.* at 300, 307 (requiring "arrestees to undress completely and submit to a visual observation of their naked bodies before taking a supervised shower.").  The Third Circuit specifically found that the Jails' security interest

7

outweighed the inmates' privacy interests, but declined to consider whether the searches could be sustained on the Jails' interest in preventing disease alone. *Id.* at 307, 311 n.9.

An overlap between a class certification requirement and the merits of a claim is no reason to decline to resolve relevant disputes if necessary to determine whether a class certification requirement is met. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 316 (3d Cir. 2008). Such an inquiry "may include a 'preliminary inquiry into the merits,'" and the court may 'consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take.'" *Id.* at 317 (citations omitted). In as much, "a district court errs as a matter of law when it fails to resolve a genuine legal or factual dispute relevant to determining the requirements." *Id.* at 320. Therefore, it is necessary for the Court to evaluate whether this particular Class has a viable claim after the Third Circuit's holding in *Florence*.

*Florence* held explicitly that "the strip search procedures . . . at [the Prisons] are reasonable." *Id.* at 311. As those procedures explicitly included a delousing, it is curious as to how Plaintiff could maintain a class premised on an alleged Fourth Amendment violation that involving the very same procedures. Plaintiff attempts to play up the differences between the two procedures, that *Florence* utilized a self-applied shampoo followed by a supervised shower while the instant case concerns a delousing spray followed by an unsupervised shower. It is true that Fourth Amendment reasonableness is a fact-specific inquiry, "not capable of precise definition or mechanical application." *Id.* at 301 (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). However, the Court agrees with the Defendant that these are *de minimus* differences that do not materially alter the Fourth Amendment

8

analysis.

Moreover, there is no component of the SCCF's delousing procedure that would somehow aggravate the invasiveness of the strip search that *Florence* deemed acceptable. While the Court agrees below that, for certification purposes, there is merit to the claim that such procedures could present unwarranted medical treatment, combining a delousing treatment with a strip search does very little to broaden the scope of that particular intrusion–the search of the naked body.  The delousing procedure itself does not inherently increase the exposure or duration of a strip search, and while the Plaintiff never specifies, the Court is hard-pressed to determine exactly how delousing functionally exaggerates the scope of the approved strip search.  While perhaps a medical treatment, to characterize delousing as an extension of the strip search appears redundant.

Therefore, relying on the Third Circuit's holding that suspicionless searches of pre-trial detainees including a delousing procedure is permissible absent particularized suspicion, the Court finds no viable Fourth Amendment claim in the instant case.  As it cannot be said that there is a common question of law as to the Fourth Amendment class, that Class fails on the commonality prong and will not be certified.

**(b) The Fourteenth Amendment Class**

The Fourteenth Amendment Class seeks to include all pre-trial and sentenced detainees who were subjected to delousing procedures upon their entry to the SCCF.

Within the class of detainees subjected to strip search procedures, commonality is high as each was subjected to the very same delousing procedure.  There is no evidence in the record that there was any differentiation whatsoever in the delousing process.  In fact, after a rigorous analysis of the facts, the Court agrees by a preponderance of the evidence

9

that the SCCF employed a policy of delousing each inmate who was strip searched.[2]  While

Defendant argues that there are a multitude of reasons as to why an inmate would be strip

searched, each inmate who was striped searched was necessarily subjected to delousing

without further inquiry.

Defendant maintains that at the time of Plaintiff's intake, the SCCF had a policy in

effect requiring "individualized, reasonable suspicion before a detainee may be strip

searched." (Doc. 49 at 8).  The factors contributing to such a determination included:

> the appearance and demeanor of the detainee, the nature of the charges
> pending against the detainee, the detainee's conduct during the period of
> confinement, the detainee's prior arrest record if known, and any other
> reasonable suspicion based upon specific circumstances that leads the
> corrections officer the suspect that the detainee is concealing weapons,
> evidence of a specific crime, controlled substances or other contraband.

(*Id.* at 8-9).  Aside from potentially the appearance and demeanor of the detainee, none of

these factors speak to whether delousing, a necessary component of the strip search, is

warranted.  Specifically, the factors above appear to be wholly tailored towards drugs and

contraband and include no express medical determinations.  From the facts, it cannot be

said that these detainees were deloused pursuant to any sort of individualized determination.

As such, a common, if not identical, set of facts applies to each member of this Class,

comprised of detainees who were automatically subjected to a delousing "regardless of

whether there is reason to believe that detainees have a medical condition that would benefit

---

[2]In her deposition, Corrections Officer Smith denied that there would be reason to suspect that someone who was strip searched was more likely to have lice.  Smith Dep., 44:22-45:1, June 25, 2010.  Of course, the record well establishes that all strip searched detainees were deloused. Conigliaro Dep., 86:2-6, Feb. 24 2010; Stewart Dep., 94:5-95:11 (affirming that for those detainees who get strip searched, "there's no attempt to determine whether they might be carrying parasites that will require them to be deloused"); Hunsinger Dep., 18:8-11, April 13, 2010.

from this medical treatment and without advising detainees of the scope of the medical procedure or providing them with the opportunity to decline to undergo the procedure." (Doc. 42 at 2).  Unlike *Dukes*, where commonality was destroyed where there was no "common mode of exercising discretion that pervade[d] the entire company,"  131 S.Ct. at 2554-55, here there is a solid policy that applied directly to all potential class members.  *See e.g. Churchill v. Cigna Corp.*, No. 10-6911, 2011 WL 3563489 at *4 (finding an indisputable national policy necessarily ran inapposite to the *Dukes* holding).

Flowing from these common facts is a common question of law–whether it was reasonable for the Defendant to automatically delouse all individuals who were strip searched.  Even more importantly under the *Dukes* holding, this common question will be wholly satisfied by a singular answer.

The Due Process clause of the Fourteenth Amendment confers the "right to refuse unwanted medical treatment, and . . . the right to sufficient information to intelligently exercise those rights."  *White v. Napoleon*, 897 F.2d 103, 111 (3d Cir. 1990) (citations omitted).  In the prison setting, prisoners "retain a limited right to refuse treatment and a related right to be informed of the proposed treatment and viable alternatives."  *Id.* at 113.  While prisons can force medical procedures on prisoners where they are necessary in furtherance of valid penological ends, prisoners still "have a right to such information as is reasonably necessary to make an informed decision to accept or reject proposed treatment, as well as a reasonable explanation of the viable alternative treatments that can be made available in a prison setting."  *Id.*  Flowing from this, the Fourteenth Amendment class clearly shares a common question of law–whether Defendant has "violated Plaintiff and the Class's

right to refuse unwanted medical treatment." (Doc. 42 at 7).

Defendant cites a Seventh Circuit opinion for the proposition that delousing is clearly an allowable procedure tied to a jail's legitimate interest in sanitary conditions. *Russell v. Richards*, 384 F.3d 444 (7th Cir. 2004). There, inmates were instructed to self-apply a delousing shampoo, and they had the right to refuse. *Id.* at 446. That court accepted the premise that directing the use of shampoo did trigger the prisoners' constitutional right to refuse unwanted medical treatment. *Id.* at 447. From there, that court applied the factors set out in *Turner v. Safley*, 482 U.S. 78 (1987), to determine whether the prison's procedures were "reasonably related to legitimate penological interests." *Id.* at 447-49. On the particular facts before that court, the judge concluded that "the record does not support the conclusion that the jail's policy with respect to delousing shampoo amounts to an unreasonable intrusion on an inmate's constitutional rights." *Id.* at 449. As such a determination is highly fact-specific, it is unclear at this juncture whether the same result would be had in the instant case. However, it is clear beyond a preponderance of evidence that the Plaintiff has a legitimate claim under the law that is both common in law and fact to those of the overall proposed Class.

Unlike the Fourth Amendment claims, whether delousing absent necessity and without consent provides a triable issue under the Fourteenth Amendment. Therefore, as there are common questions of fact and law to the Fourteenth Amendment Class, the commonality qualification is satisfied.

**(3.) Typicality**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are

12

typical of the claims or defenses of the class." This element appraises the alignment between the named plaintiff's particular case and the claims of the other potential class members. *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001). "The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees." *Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994). "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Id.* at 58 (citation omitted).

Plaintiff Logory's interests are squarely aligned with those of the putative class. For all intents and purposes, Logory's claims arise out of the same exact course of conduct as that of all of the other putative class members–a policy that strip searches necessitate delousing regardless of any specific determinations. In fact, the class is defined as a function of being subjected to identical treatment by SCCF employees. While Plaintiff Logory's alleged state of intoxication at his intake may have rendered him atypical as to his initial claim of being subjected to a strip search absent cause, Plaintiff now only pursues claims against the delousing procedure, and his status at intake is no longer relevant. There is no evidence that he, or any detainee entering the facility, was deloused based on any particularized determination of necessity. Furthermore, while Plaintiff seeks to represent all inmates, both pre-trial and incarcerated, there is no indication that his delousing experience as a pre-trial detainee differs in any regard from that of an incarcerated inmate.

As such, the Court concludes that Plaintiff Logory's claim is highly typical of those of

the class generally, and this element of Rule 23(a) is satisfied.

### (4.) Adequacy of Representation

Rule 23(a)(4) requires that "the representative part[y] will fairly and adequately protect the interests of the class." This requirement has been interpreted to analyze "the qualifications of the counsel to represent the class" and "to uncover conflicts of interest between named parties and the class they seek to represent." *Barnes v. American Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998). The Defendant has raised no challenge to this element of the Rule 23(a) certification.

Upon investigation of their credentials, Plaintiff's counsel appears to be "qualified, experienced, and generally able to conduct the proposed litigation." *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975). Plaintiff's counsel state that they have "the resources, expertise and experience to successfully prosecute this action against the Defendant." (Doc. 1 at 5). The Court agrees and further notes that all of the lawyers are overall accomplished and experienced, and at least one has extensive experience in the realm of complex litigation. As such, the Court finds no indication that the adequacy of representation is lacking in any respect.

The Court also finds that the named Plaintiff will adequately protect the interests of the class. Plaintiff Logory has sufficient interest in challenging the procedure and obtaining compensation and his interests in no way diverge from those of the putative class. Therefore, the Court finds representation of this class adequate, and the requirements of Rule 23(a) are fully satisfied in respect to the Fourteenth Amendment Class.

14

**C. Certification Under Rule 23(b)**

Plaintiff is primarily seeking class certification under the Federal Rules of Civil Procedure Rule 23(b)(3).  (Doc. 50 at 3).  However, in the alternative, Plaintiff seeks to certify this class pursuant to Rule 23(b)(2).

**(1.) Rule 23(b)(3)**

Under Rule 23(b)(3), the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).   Rule 23(b)(3) therefore adds two further requirements  to the class action calculus: predominance and superiority.

**(a) Predominance**

"Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation."  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (citation omitted).  This goes far beyond the commonality requirement of Rule 23(a), and requires the district court to "formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Id.* (quoting *In re New Motor Vehicles Can. Exp. Antitrust Litig.*, 522 F.3d 6, 20 (1st Cir. 2008)).  Specifically, "[i]f proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Id.* (citing *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001)).

"[T]he task for plaintiffs at class certification is to demonstrate that the element of [their claim] is capable of proof at trial through evidence that is common to the class rather

than individual to its members.  Deciding this issue calls for the district court's rigorous assessment of the available evidence and the method or methods by which plaintiffs propose to use the evidence to prove impact at trial." *Id.* at 311-12.

Following these standards, predominance is met in the instant case.  The nature of Plaintiff's claim is precisely that all detainees inducted into the SCCF were treated exactly the same.  From the factual record, it is evident that each detainee who was strip searched was wholesale deloused, including those who evidently did not require the procedure.[3]  As such, the cause of action requires almost no individual treatment.  The very fact that SCCF's policy appears to have not made individualized determinations as to the necessity of delousing is precisely what satisfies the predominance requirement in this action.

Importantly, this claim is easily capable of proof at trial through evidence common to the class.  As the allegation is that all detainees were treated similarly unconstitutionally, this action especially lends itself to proof that is common to the class, and Plaintiff will attempt to prove this case in the form of prison policies and sworn testimony.  Factual questions as to the exact nature of this policy, its implementation, and its effects will be the same for each class member and will thus predominate to a very high degree.

Other cases have met the predominance requirement on very similar theories.  In *Florence*, the defendants argued that predominance was not satisfied under strip search

---

[3]Deposition testimony indicates that individualized determinations were actually disregarded. In his testimony, Corrections Officer Stewart affirmed that there was "no attempt to obtain reasonable suspicion to determine whether [inmates were] carrying parasites prior to delousing them" and that the SCCF policy was "to delouse everyone regardless or what their answer to the [medical questions] may be."  Stewart Dep. 94:23-95:11.  Defendant acknowledges that "the testimony . . . clearly establishes that there is no separate delousing policy at the Susquehanna County Jail; no one is deloused unless he is strip searched."  (Doc. 49 at 15).

claims as they believed each potential class member would be required to present individualized proof of their specific damages. *Florence v. Board of Chosen Freeholders of County of Burlington*, No. 05-3619, 2008 WL 800970 at *13 (D.N.J. March 20, 2008).  That court disagreed, noting that "liability will seemingly boil down to . . . the intake procedures . . . . a common question and, as previously stated, subject to generalized proof." *Id.*  This is highly analogous to the instant case, which will focus almost exclusively on the SCCF's intake procedures.  However, even if more individualized calculations were necessary, predominance can still be satisfied. *Id*; *see also Gwiazdowski v. County of Chester*, 263 F.R.D. 178, 189 (E.D. Pa. 2009) (finding that where a delousing procedure was applied pursuant to policy, "[p]laintiff will be able to show that she was searched through common rather than individual evidence.").  Here, Plaintiff's case will substantially center around such policy, and the overall class action ranks high on the predominance scale.

Finally, predominance also requires "that the alleged damages are capable of measurement on a class-wide basis using common proof." *Behrend v. Comcast Corp.*, No. 10-2865, 2011 WL 3678805 at *15 (3d Cir. Aug. 23, 2011).  As above, the inquiry similarly looks to whether damages can be measured "on a class-wide basis using common proof." *Id.* at *18.  This is a determination that sits on a continuum as some individualization in damages will not alone defeat certification. *Id.*  However, as established, almost no individualized determinations are necessary in the instant case.  Variation in damages is likely to be very rare due to the dearth of reported injury in the record, and the rare individual calculations that do arise are sure to be simple and isolated.  Therefore, as the putative class will be wholly comprised of those who were subjected to the same procedure and suffered

17

essentially identical damages, the Court finds the predominance requirement is squarely satisfied.

**(b) Superiority**

Pertinent to a finding of superiority is: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). Specifically, the superiority requirement asks a trial court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 149 (3d Cir. 2008) (quoting *Georgine v. Amchem Prods.*, 83 F.3d 610, 632 (3d Cir. 1996)).

Allowing the instant action to proceed as a class action is a far superior method of adjudication. In fact, this is exactly the sort of claim that is best-suited to class action litigation. "In a case like this one, where the plaintiff's claims attack the same course of defendants' conduct, proceeding as a class action is far superior to allowing piecemeal litigation of the exact same claims in countless lawsuits potentially occurring throughout the country." *Stanford v. Foamex L.P.*, 263 F.R.D. 156, 174 n.22 (E.D. Pa. 2009). A case like this, pertaining to the Defendant's uniform policy, is especially appropriate for the economies of scale that will result from the class action mechanism.

Moreover, "class certification is preferred where the recovery being sought by each of the plaintiffs is not sufficiently large to render individualized litigation a realistic possibility."

*Bizzarro v. Ocean County*, No. 07-5665, 2009 WL 1617887 at *17 (D.N.J. June 9, 2009) (citation omitted).  Addressing the rights of those who would not otherwise be appropriately incentivized to bring their own singular claims was precisely the aim of the Advisory Committee in promulgating Rule 23(b)(3).  *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997).  Here, as Plaintiff points out, the class is likely to "contain poor and marginalized class members who are unlikely to be able to litigate these cases individually, especially when the prosecution of delousing cases generally requires expensive testimony from medical doctors." (Doc. 33 at 36).  As such, class certification might not just be superior, but necessary in order to try these particular claims.  *See e.g. Tardiff v. Knox County*, 365 F.3d 1, 7 (1st Cir. 2004).  Thus, to allow this to proceed as a class action would not be removing claims from the hands of the class members, but would instead afford them an opportunity to pursue them.

Finally. the Court is not aware of any claims pending by or against class members on this matter, and notes that such an action is most sensibly brought within the same judicial district in which the SCCF is located.  Therefore, for the foregoing reasons, the Court finds superiority satisfied in the instant case.

### (2.)  Rule 23(b)(2)

Certification as a Rule 23(b)(2) class may be warranted where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

As the Court is prepared to certify this Class pursuant to Rule 23(b)(3), it is not

19

necessary to endeavor on a lengthy analysis of the merits of a Rule 23(b)(2) certification. However, such actions are not appropriate where, as here, the Plaintiff is seeking monetary damages.  In his Prayer for Relief, Plaintiff specifically requests compensatory damages for himself and "each member of the proposed Class in an amount to be determined by a jury and/or the Court on both an individual and a class-wide basis." (Doc. 1 at 10).  The Supreme Court has recently clarified Rule 23(b)(2) actions in holding that "individualized monetary claims belong in Rule 23(b)(3)."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011).  While Rule 23(b)(2) may allow monetary claims on an indivisible basis, individual relief is inapposite to the Rule's purpose of remedying classwide relief in a single classwide order.  *Id.* at 2557-58.

## D. Notice to Potential Class Members

Federal Rule of Civil Procedure 23(c)(2)(B) provides that in any action maintained under Rule 23(b)(3), the Court must direct notice to all members that can be identified through reasonable effort.  As such, the Court will order the parties to formulate a plan for such notice to be presented to the Court.

## E. Appointment of Class Counsel and Class Representative

As the Court finds Plaintiff Roneld Logory will fairly and adequately represent the interests of the class, he will therefore be appointed as Class Representative.

Rule 23(g)(1) further requires the Court to appoint class counsel.  As noted above, the Court finds Plaintiff's counsel to be "qualified, experienced, and generally able to conduct the proposed litigation."  *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975). As such, the Court will therefore grant Plaintiff's motion to appoint them as Class Counsel.

## III. CONCLUSION

For the foregoing reasons, the Court will certify the Fourteenth Amendment Class as a Federal Rule of Civil Procedure Rule 23(b)(3) class action.  The Fourth Amendment Class will not be certified.  An appropriate order follows.


 October 5, 2011                                              /s/ A. Richard Caputo
Date                                                          A. Richard Caputo
                                                             United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

RONELD LOGORY,

      Plaintiff,

         v.

THE COUNTY OF SUSQUEHANNA,

      Defendant.

CIVIL ACTION NO. 3:09-CV-1448

(JUDGE CAPUTO)

## ORDER

**NOW**, this 5th day of October, 2011, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Class Certification (Doc. 30) is **GRANTED IN PART**; and **IT IS FURTHER ORDERED** that the class hereby certified as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of the following class:

> All persons who have been placed into custody of the Susquehanna County Jail after being sentenced or as pre-trial detainees who were deloused upon their entry into the Susquehanna County Jail.  The Class period commences on or about July 24, 2007 and extends to the date on which the Defendant is enjoined from, or otherwise ceases, enforcing its unconstitutional policy, practice and custom of delousing detainees absent reasonable suspicion. Specifically excluded from the Class are Defendant and any and all of its respective affiliates, legal representatives, heirs, successors, employees or assignees.

**IT IS FURTHER ORDERED** that the parties shall submit in writing their joint plan of class notice that complies with the requirements of Federal Rules of Civil Procedure Rule 23(c)(2)(B) within twenty-one (21) days of the date of this Opinion & Order; and

**IT IS FURTHER ORDERED** that Plaintiff Roneld Logory is designated Class Representative on behalf of the Class; and

**IT IS FURTHER ORDERED** that Plaintiff's attorneys Charles J. LaDuca and Alexandra C. Warren of Cueno Gilbert & LaDuca, LLP; Beverly Steinberg-Sporn; and Daniel Levin of Levin Fishbein Sedran & Berman; are designated as Class Counsel.

   /s/ A. Richard Caputo
A. Richard Caputo
United States District Judge

2