**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

RONELD LOGORY, Individually and on
Behalf of a Class of Others Similarly
Situated,

        Plaintiff,

        v.

COUNTY of SUSQUEHANNA,

        Defendants.

CIVIL ACTION NO. 3:09-CV-1448

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court are the County of Susquehanna's ("Defendant") Motion for Summary Judgment (Doc. 77) and Motion to Decertify Class (Doc. 93), and Roneld Logory's ("Logory") Motion for Partial Summary Judgment (Doc. 80) and Motion to Exclude Testimony of Defendant's Expert Anthony Pizon, M.D. (Doc. 88). Logory and members of the class were subject to a mandatory delousing procedure by Defendant as part of their admission to the Susquehanna County Correctional Facility ("SCCF"). Logory contends that Defendant's delousing policy violates his right to refuse unwanted medical treatment protected by the Fourteenth Amendment and that based on the undisputed facts, he is entitled to judgment as a matter of law on the issue of liability pursuant to 42 U.S.C. § 1983.[1] Defendant seeks summary judgment in its favor, arguing that because its delousing

---

[1] Logory's allegations that the delousing policy violates inmates' rights to refuse unwanted medical treatment protected by the Fourteenth Amendment are contained in his Reply Brief in Further Support of Plaintiff's Motion for Class Certification (Doc. 42). Logory acknowledges that his Complaint (Doc. 1) "arguably does not include a separate count asserting a Fourteenth Amendment claim." *Id.* at 5 n.5. However, he asserts that "the parties conferred and agreed that rather than submitting an Amended Complaint, Plaintiff would explain the scope of the delousing claim in this submission and that Defendant

policy is reasonably related to a legitimate penological objective, it is valid under the standard established by *Turner v. Safely*, 482 U.S. 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). Because Defendant's delousing policy was reasonably related to its legitimate interest in maintaining a healthy and sanitary facility, Defendant's motion for summary judgment will be granted with respect to the constitutionality of the delousing policy and Logory's motion for partial summary judgment will be denied. Defendant's motion for summary judgment with respect to disqualification of the testimony of Logory's expert witness will be denied. Finally, Defendant's motion to decertify class and Logory's motion to exclude Defendant's expert testimony will be denied as moot.

## BACKGROUND

**A.      Factual Background**

Defendant's policies and procedures require inmates to undergo a delousing procedure upon admission to SCCF if they are first subjected to a strip search. (Doc. 85, Pl.'s Statement of Material Facts, "Pl.'s SMF," ¶ 10.) In effect, almost all new admissions to SCCF are strip searched. (Pl.'s SMF, ¶ 18.)

It is undisputed that there have been at least three (3) reported cases of lice at SCCF in the past eight (8) to nine (9) years. (Pl.'s SMF, ¶ 22.) Dr. Hassan Khalil, medical doctor at SCCF from 1999 to October 2008, testified that he did not see an "outbreak" of lice during his employment there but did have "a few inmates with head lice." (Pl.'s SMF, ¶ 23.) Defendant produced records "concerning the presence of head lice at the facility, which noted the following: on December 1, 2008, "[a]ll females in MZ on medical isolation;" on

---

would not contest Plaintiff's right to make any argument about delousing." *Id*.

December 10, 2008, five (5) inmates were checked for head lice by the facility's nurse and were found to be free and clear; on March 20, 2011, an inmate was rechecked for head lice and was found to be clear; and on November 16, 2011, head lice were found on the hair of an inmate and the inmate was placed in isolation while two other inmates were checked and found to be free and clear of head lice.  (Pl.'s SMF, ¶ 26; Doc. 83, Ex. 17.)

The medical personnel and doctors employed at SCCF during the class period were unaware of the delousing procedures used  by the Corrections Officers (COs).  (Pl.'s SMF, ¶ 29-30.)  During the delousing procedure at SCCF, detainees were sprayed with Liceall, a delousing fluid, on the "hair, chest, underarms, [and] privates."  (Pl.'s SMF, ¶ 33.)  The spray device used by SCCF to dispense Liceall is unapproved by the manufacturer.  (Pl.'s SMF, ¶ 37.) The COs at SCCF did not comply with all of the directions on the Liceall label in their use of the product.  (Pl.'s SMF, ¶¶ 35, 37-38, 40.)  Specifically, COs did not uniformly allow the Liceall solution to remain on the inmates' bodies as indicated, despite their training to do so.  (Pl.'s SMF, ¶ 35, Defendant's Statement of Material Facts, "Def.'s SMF," ¶ 8.)  In addition, COs did not spend extra time combing out the spray or any possible nits or lice after the initial application of Liceall and the shower process. (Pl.'s SMF, ¶40.)   Failure to follow the Liceall directions impacts the effectiveness of the delousing process.  (Pl.'s SMF, ¶ 39.)

SCCF Warden Nicholas Conigliaro issued a memo on December 27, 2011, stating that COs were to start using  Pre-Emptive Strike, a different delousing product, as opposed to Liceall.  (Doc. 81, 27; Doc. 84, Ex. 26.)  Conigliaro's memo stated that "[t]he Intake Process will remain the same with the exception of the delousing delivery system."  (Doc. 84, Ex. 26.)  Section 16.5 of the SCCF Policy and Procedures Manual describes the

delousing procedure as of December 27, 2011, as follows: "[f]ollowing the search, the new commitment will be handed approximately one (1) once [sic] of non-toxic, all natural, Pre-Emptive Strike everyday lice control shampoo to utilize during their initial intake shower." (Doc. 84, Ex. 27.)

Mr. Logory was admitted to SCCF on June 18, 2008, on misdemeanor charges of driving under the influence. (Pl.'s SMF, ¶ 41.) After being strip searched, he was told to step into the shower and was "forced to be sprayed with some chemical" and subsequently to take a brief shower. (Pl.'s SMF, ¶ 46.) During the delousing procedure the COs did not explain what they were doing to Logory, and the chemical spray was "uncomfortable" and "unknown." (Pl.'s SMF, ¶ 47.) Logory testified that the experience of being deloused and admission to SCCF was distressing. (Pl.'s SMF, ¶ 48.) Logory believes that the class period should end as of December 27, 2011 because he does not contest the constitutionality of SCCF's delousing policy as of December 27, 2011. (Doc. 81, 20.)

## B.     Procedural History

Mr. Logory filed a class action complaint against Defendant on July 24, 2009. (Doc. 1.) Defendant filed an answer to the complaint on September 23, 2009. On August 31, 2010, Logory moved for class certification, which was eventually granted in part on October 6, 2011. (Docs. 9 and 10.) Pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3), the Court certified a class action on behalf of:

> All persons who have been placed into custody of the Susquehanna County Jail after being sentenced or as pre-trial detainees who were deloused upon their entry into the Susquehanna County Jail. The Class period commences on or about July 24, 2007 and extends to the date on which the Defendant is enjoined from, or otherwise ceases, enforcing its unconstitutional policy, practice and custom of delousing

4

> detainees absent reasonable suspicion. Specifically excluded
> from the Class are Defendant and any and all of its respective
> affiliates, legal representatives, heirs, successors, employees
> or assignees.

(Doc. 51.)  After class certification, discovery ensued.  The Court granted a motion to stay proceedings pending appeal to the Third Circuit Court of Appeals on December 6, 2012.  (Doc. 57.)  On January 19, 2012, the Third Circuit of Appeals denied Defendant's petition for leave to appeal pursuant to Federal Rule of Civil Procedure 23(f). (Doc. 58.)

Defendant moved for summary judgment (Doc. 73) and Logory moved for partial summary judgment (Doc. 74) on June 12, 2013.  Both parties filed briefs in opposition to the other party's motion on July 23, 2013.  (Docs. 89 and 94.)  Defendant also filed a motion to decertify class (Doc. 93) while Logory filed a motion to exclude testimony of Defendant's expert Anthony Pizon, M.D. (Doc. 88) on July 23, 2013.  Both parties filed reply briefs regarding their respective motions for summary judgment and partial summary judgment on August 7, 2013. (Docs. 98 and 97.)  Defendant also filed a brief in opposition to Logory's motion to exclude the expert testimony of Dr. Pizon on that same date. (Doc. 99.)  Therefore, the motions for summary judgement and partial summary judgment, Defendant's motion to decertify class, and Logory's motion to exclude Dr. Pizon's expert testimony are ripe for disposition.

### **DISCUSSION**

**A.    Legal Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Summary judgment is appropriate when 'the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning,* 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police,* 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.,* 83 F.3d 68, 70 (3d Cir. 1996). However, where there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson,* 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact and (2) the moving party is entitled to judgment as a matter of law. *See* 2D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the non-moving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter,* 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial

6

burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson,* 477 U.S. at 256–57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. N.J. Meadowlands Comm'n,* 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id.* (quoting *Hugh v. Butler Cnty. Family YMCA,* 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

Where cross-motions for summary judgment are filed, as is the case here, the summary judgment standard remains the same. *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). Of course, when presented with cross motions for summary judgment, the Court must and does consider the motions separately. *See Williams v. Phila. Hous. Auth.*, 834 F.Supp. 794, 797 (E.D. Pa. 1993), *aff'd*, 27 F.3d 560 (3d Cir. 1994).

**B.** **Summary Judgment Motions**

    **1.** **Defendant's Motion for Summary Judgment**

As noted, Defendant moved for summary judgment on June 12, 2013. First,

Defendant asserts that the delousing portion of SCCF's strip search policy is constitutional under *Florence v. Bd. of Chosen Freeholders of Burlington*, 132 S. Ct 1510, 182 L. Ed. 2d 566 (2013). Second, Defendant contends that the delousing portion of SCCF's strip search policy is constitutional under the standard set forth in *Turner v. Safely*, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). Third, Defendant contends that the decision of the Seventh Circuit Court of Appeals in *Russell v. Richards*, 384 F. 3d 444 (7th Cir. 2004) is "precedential and controlling." (Doc. 78, 4.) Finally, Defendant requests that the court disqualify the testimony of Logory's expert, Dr. Michael R. Greenberg.

### 2. Logory's Motion for Partial Summary Judgment as to Liability

Logory's motion for partial summary judgment was also filed on June 12, 2013. Logory seeks a declaratory judgement that Defendant's policy and practice of requiring sentenced and pretrial detainees to undergo the mandatory delousing procedure from July 24, 2007, to December 26, 2011, violates the Fourteenth Amendment. In support, Logory contends that the Defendant's policy is unconstitutional under *Turner* because: (1) Defendant cannot demonstrate that the policy was rationally related to its interest in maintaining a healthy and sanitary facility by preventing outbreaks of lice; (2) the burden on SCCF of accommodating inmates' rights to refuse treatment is slight; and (3) an alternative approach of confining high-risk inmates and offering other inmates the choice to undergo delousing accommodates inmates' rights without impacting SCCF's valid penological objectives. According to Logory, since there are no material facts in dispute regarding the SCCF's delousing policy, summary judgment in his favor on liability is appropriate.

8

**C.      Analysis**

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen . . . or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured, . . ." 42 U.S.C. § 1983. "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)). A municipality may be liable under § 1983 if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). A plaintiff seeking to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. *Monell*, 436 U.S. at 691, 694, 98 S. Ct. at 2037.

**1.      *Florence* Is Not Determinative**

Defendant first argues that SCCF's delousing procedure is constitutional in light of the Supreme Court's decision in *Florence v. Bd. of Chosen Freeholders of Burlington*, 132 S. Ct 1510, 182 L. Ed. 2d 566 (2013). The Supreme Court granted certiorari in *Florence* to address whether the Fourth Amendment required COs to exempt some detainees who were to be admitted to the jail's general population from the search at issue. *Id*. at 1515. Admission to the jail included a requirement that "every arrestee . . . shower with a delousing agent." *Id*. at 1514. The Supreme Court concluded that the

search at issue in *Florence* "struck a reasonable balance between inmate privacy and the needs of the institution." *Id.* at 1523. Because the issue here is not inmate privacy but rather the constitutionality of Defendant's delousing policy in light of inmates' right to be free from unwanted medical treatment under the Fourteenth Amendment, Defendant's motion for summary judgment will not be granted on this ground.

### 2. Application of the Factors Identified in *Turner*

Inmates have a right to refuse unwanted medical treatment under the Fourteenth Amendment of the U.S. Constitution. *See Washington v. Harper*, 494 U.S. 210, 221-22, 110 S. Ct 1028, 108 L. Ed. 2d 178 (1990); *Cruzan v. Director, Mo. Dept. of Health*, 497 U.S. 261, 278, 110 S. Ct. 2841, 111 L. Ed. 2d 224 (1990); *White v. Napoleon*, 897 F.2d 103, 113 (3d Cir. 1990). When an inmate or detainee alleges that his constitutional rights have been violated by a prison regulation, the regulation is valid if it is "reasonably related to legitimate penological interests." *Turner,* 482 U.S. at 89. *See also Harper*, 494 U.S. at 224 ("[T]he standard of review we adopted in *Turner* applies to all circumstances in which the needs of prison administration implicate constitutional rights.").[2]

Logory contends that Defendant's policy of spraying inmates with Liceall

---

[2] In addition to arguing that Defendant's delousing policy is invalid under *Turner*, Logory also advances arguments under the standard set forth in *White v. Napoleon*, 897 F.2d 103 (3d Cir. 1990). *White was* decided by the Third Circuit Court of Appeals on February 23, 1990, four (4) days before *Harper* was decided by the Supreme Court. As indicated in *Harper*, the standard articulated in *Turner* governs this case, and Logory's arguments pursuant to the standard set forth in *White* will not be considered further. *See also Iseley v. Dragovich*, 236 F. Supp. 2d 472, 476 (E.D. Pa. 2002) ("The proper inquiry is 'whether the regulation [at issue] is reasonably related to legitimate penological interests'" under the *Turner* factors).

constitutes unwanted medical treatment.  Defendant acknowledges that "[b]oth medical experts in this matter have testified that the use of Liceall is a "medical treatment" for the condition of pediculosis." (Doc. 78, 15.)  Although the Seventh Circuit Court of Appeals in *Russell* "assum[ed] without deciding" that use of Liceall constitutes medical treatment, the Court is not convinced that it does.  *See Russell*, 384 F.3d at 447.  However, even if the Court did find that SCCF's delousing policy qualifies as medical treatment, the policy is constitutional because it reasonably relates to the SCCF's legitimate penological interest in maintaining a healthy and sanitary facility.

In *Turner*, the Supreme Court describes various factors "relevant to determining the reasonableness of a prison regulation. . . ."  *See Turner*, 482 U.S. at 89-90.  *Harper* specifies that three of the factors described in *Turner* are relevant to determining whether a prison policy infringes on inmates' right to be free from unwanted medical treatment.  *See Harper*, 494 U.S. at 224.  First, "'there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it.'" *Id*. at 224-25 (quoting *Turner*, 482 U.S. at 89).  The burden is on the party defending the policy to demonstrate that the policy's drafters "'could rationally have seen a connection' between the policy and the interest." *Wolf v. Ashcroft*, 297 F.3d 305, 308 (3d Cir. 2002) (citing *Waterman v. Farmer*, 183 F.3d 208, 217-18 (3d Cir. 1999)).  Second, courts should consider "'the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally.'" *Harper*, 494 U.S. at 225 (quoting *Turner*, 482 U.S. at 90).  Third, "'the absence of ready alternatives is evidence of the reasonableness of a prison regulation.'" *Id.*  However, consideration of ready alternatives is not "a 'least restrictive

11

alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner*, 482 U.S. at 90-91 (internal citations omitted).

The Third Circuit Court of Appeals treats the initial *Turner* factor as a threshold inquiry. "The first factor is 'foremost' in the sense that a rational connection is a threshold requirement—if the connection is arbitrary or irrational, then 'the regulation fails, irrespective of whether the other factors tilt in its favor.'" *Wolf*, 297 F.3d at 310 (quoting *Shaw v. Murphy*, 532 U.S. 223, 229–30, 121 S. Ct. 1475, 149 L. Ed. 2d 420 (2001)). If a defendant satisfies his initial burden of showing a valid, rational connection between the regulation and a legitimate penological interest, this "'commences rather than concludes [the] inquiry'" and courts must "proceed to consider the remaining Turner factors in order to draw a conclusion as to the policy's overall reasonableness." *Wolf*, 297 F.3d at 310 (quoting *DeHart v. Horn*, 227 F.3d 47, 53 (3d Cir. 2000) (en banc)).

Applying the *Turner* factors to the case at hand, Defendant's motion for summary judgment will be granted with respect to the constitutionality of the delousing policy because it is reasonably related to SCCF's legitimate penological interest in maintaining a healthy and sanitary facility and avoiding outbreaks of lice.

### a. There is a Valid, Rational Connection between the SCCF's Delousing Policy and a Legitimate Governmental Interest

With respect to the first *Turner* factor, it is not disputed that SCCF has a legitimate interest in maintaining a sanitary facility. (Doc. 89, 3.) However, Logory contends that the threshold inquiry under the first *Turner* factor is not satisfied because Defendant cannot establish that SCCF's delousing policy was "actually designed to

protect" or "in fact protects" this interest.  (Doc. 89, 4.)  Logory also argues that the delousing policy is unnecessary because he does not consider three (3) cases of lice at the facility in eight (8) to nine (9) years sufficient to justify implementation of a delousing policy.  (Doc 89, 3; Doc. 81, 6-8.)  Further, Logory contends that the delousing procedure itself was ineffective because the COs at SCCF did not comply with the manufacturer's directions in their use of Liceall (Doc 89, 3; Doc. 81, 9-12.)

Defendant contends that the connection between preventative lice treatment and the goal of maintaining a healthy and sanitary facility is clear and rational.  (Doc. 78, 10.) In response to Logory's assertion that delousing is unnecessary, Defendant does not dispute the number of recorded instances of lice at SCCF, but argues both that "there is no magic number" of lice outbreaks in the prison setting that triggers the necessity of a delousing policy, and that the low incidence of reported lice at the prison "may well be precisely because of the Defendant's routine delousing."  (Doc. 98, 2.)

A party's initial burden under *Turner* is slight, and in certain instances "may be a matter of common sense."  *Wolf*, 297 F.3d at 308-09.  To be sure, a party must demonstrate the rational connection between the policy and the interest by more than "'a conclusory assertion,'" but a showing of actual or factual connection, as Logory contends, is not required.  *See Jones v. Brown*, 461 F.3d 353, 360 (3d Cir. 2006) (quoting *Wolf*, 297 F.3d at 308).

When a prison policy aims to minimize the risk of a harmful occurrence, to find a rational connection between the policy and the facility's interest in preventing that harmful occurrence, there must be some "rational basis for believing there was a non-negligible risk" that the harm will occur.  *See Jones,* 461 F.3d at 361 (finding no rational

relationship between a prison's policy of opening mail in the absence of inmate addressees and its interest in protecting the safety of the prison by reducing the risk of anthrax contamination two (2) years after the events of September 11, 2001 and of October of 2001, when letters containing anthrax spores were posted). Here, the parties do not dispute that there have been at least three (3) reported cases of lice at the prison during the class period. This is more than a "non-negligible risk" of a lice outbreak at the prison, and is therefore sufficient to demonstrate a rational connection between the prison's delousing policy and its interest in maintaining a healthy and sanitary facility.

Contrary to Logory's contentions, the effectiveness of SCCF's delousing policy as implemented is not material to whether the policy's drafters could rationally have seen a connection between the delousing policy and maintaining a healthy and sanitary facility under to the initial *Turner* factor. The parties agree that the COs did not uniformly follow the manufacturers precise instructions for applying Liceall. For instance, inmates were not always instructed to leave the product in their hair for ten (10) minutes prior to showering, and inmates were not subject to a combing out procedure afterwards. Although failure to precisely follow the Liceall directions may have made the delousing procedure less effective than it could have been had COs strictly adhered to the instructions, this failure to comply with the directions does not defeat the rational connection between SCCF's policy and its legitimate penological interest. The Seventh Circuit Court of Appeals held that there was a rational connection between a jail's legitimate interests and its "prophylactic approach of giving a cup of delousing shampoo to each inmate when he arrives at the jail and instructs him to use it in the shower," despite the fact that COs did not abide by the manufacturer's directions. *See Russell*,

14

384 F.3d at 448 ("[T]he policy might be more effective if the jail also instructed the inmate to leave the shampoo in his hair for the recommended period of 10 minutes . . . and/or supplied a follow-up dose as recommended by the manufacturer.").

Logory argues that *Russell* should be distinguished from the case at hand because in *Russell* inmates were given Liceall in a disposable cup, as opposed to being sprayed with it before a shower. The Court already found that the difference between a policy requiring self application of delousing shampoo followed by a supervised shower and being sprayed with a delousing shampoo followed by an unsupervised shower is *de minimus* and does not "materially alter the Fourth Amendment analysis." *Logory v. County of Susquehanna*, 277 F.R.D. 135, 142 (M.D. Pa. 2011). Similarly, in the context of a Fourteenth Amendment analysis, this difference in method of application does not greatly impact the determination of whether there is a rational connection between a prison's policy and its legitimate penological interest.

Logory also attempts to distinguish *Russell* by highlighting that the prison in that case had "endured a number of lice outbreaks in the past," which demonstrated that the risk of lice was "more than an abstract possibility." *Id*. at 448-49. He argues that Defendant cannot make a similar demonstration about the possibility of a lice outbreak at SCCF. (Doc. 89, 9.) Because the court did not specify that record of a precise number lice outbreaks was necessary to find that the prison policy was valid in *Russell*, the Court agrees with Defendant that this potential difference is insufficient to distinguish the two cases. Furthermore, the three (3) reported cases of lice at SCCF during the class period demonstrate that a lice outbreak was more than an "abstract" or theoretical possibility at the facility.

15

### b.  Accommodating Inmates' Right to Refuse Unwanted Medical Treatment Would Substantially Burden Defendant

With respect to the second relevant *Turner* factor, Logory suggests that SCCF's current delousing policy shows that inmates' right to refuse unwanted medical treatment can be accommodated without substantially burdening the guards, inmates, and allocation of SCCF resources generally.  (Doc. 89, 5.)  Alternatively, Logory suggests that Defendant could have implemented a delousing protocol "whereby detainees whom Corrections Officers actually suspected were infected with lice would be placed in isolation until they could be seen by medical personnel, and upon a finding that they were in fact infected with lice, these inmates would be treated."  *Id*.  Logory relies on the expert report of Dr. Greenberg for this suggestion. (Doc. 81, Ex. 21).  Further, Logory contends that this alternative procedure is feasible because SCCF "already has facilities available to isolate inmates if necessary for medical conditions and new admissions are routinely seen by medical staff." (Doc. 81, 29.)   In addition, Logory suggests that inmates could be given the option of showering with a delousing solution.  (Doc. 81, 29.)

According to Defendant, "[i]f it is determined that an inmate had head-lice, he or she is placed into isolation . . . [and] is not returned to the general population until he or she is cleared by medical."  (Doc. 83, Ex. 20 ¶ 21).  However, SCCF does not have the physical space to individually isolate all incoming inmates and detainees until they are examined by a physician to determine whether they harbor lice.  (Doc. 98, Ex. A ¶ 10.)  Specifically, Warden Conigliaro states that SCCF only has two (2) isolation cells, and the only other available space in the prison that could accommodate individual isolation prior to a medical examination is the "special housing" block.  *Id.* at ¶¶ 10-11.  For security

reasons, Defendant notes that detainees cannot be housed in the "special housing" block for this purpose. *Id.* Further, according to Conigliaro, more than fifty (50) percent of incoming detainees are either dirty in appearance, homeless, have a history of intravenous drug use, are incoming from overcrowded conditions, or are admitted due to alcohol related offenses, and that, according to Logory's expert, all of these people would require isolation because they would qualify as "high risk." *Id.* at ¶¶ 4-5. Logory has failed to offer evidence supporting his contention that it would not be substantially burdensome for SCCF to isolate all high-risk incoming detainees. Therefore, despite Defendant's evidence to the contrary, Logory has failed to offer evidence demonstrating that his proposed method of accommodating inmates' rights would not substantially burden other inmates, staff, and allocation of SCCF resources generally under the second relevant *Turner* factor.

Further, if Defendant allowed inmates the right to refuse delousing, this would also result in a substantial burden on other inmates, guards, and prison resources generally. Given the option, infected incoming inmates could elect not to treat themselves with Liceall, enter the general prison population with lice, and expose other inmates and staff to infestation. As the Seventh Circuit Court of Appeals explained in *Russell*, "[p]ermitting the individual inmate to reject the delousing shampoo thus would place the health and sanitation of the other prisoners and jail staff at risk . . . ." *Russell*, 384 F.3d at 449. Therefore, accommodating inmates' rights by offering them the option of using delousing shampoo would be a substantial burden for Defendant.

Finally, with respect to Logory's initial argument that SCCF's current delousing policy accommodates inmates' rights without substantially burdening Defendant, the

Court agrees with Defendant that SCCF's delousing policy did not change significantly when Liceall was replaced by Pre-Emptive Strike. Beyond product name, it is not clear that there is a material difference between the two delousing products.[3] Therefore, it appears that the only remaining difference between the delousing policy at issue and the policy in place as of December 27, 2011, is the method of application of the delousing solution: Liceall was sprayed on inmates and Pre-Emptive Strike is dispensed to prisoners in a disposable cup. As noted above, this difference is *de minimus* and thus does not represent an accommodation of inmates' right to be free from unwanted medical treatment.

### c. Reasonable Alternatives

Under the final *Turner* factor, the absence of ready alternatives to a given prison regulation is evidence of the reasonableness of the regulation. *See Turner*, 482 U.S. at 90. "By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." *Id*. More specifically, "if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id.* at 90-91.

The parties arguments under the final *Turner* factor overlap with those made with respect to the second relevant factor. In terms of the availability of reasonable

---

[3] Logory contends that Pre-Emptive Strike differs from Liceall because it has not been approved by the Food and Drug Administration (FDA). (Doc. 83, Ex. 21.) The Court does not find this distinction to be sufficiently meaningful.

alternatives, in addition to the approach advanced by Logory's expert addressed above, Logory seems to assert that the policies of other correctional facilities in the state represent reasonable alternatives to SCCF's disputed policy. Specifically, he contends that "it is significant that other Pennsylvania Correctional Facilities do not require inmates to submit to a delousing medical procedure upon admission." (Doc. 81, 17.) In support of this position, Logory references a number of different policies from correctional facilities across the state that differ from the policy employed at SCCF.

Because consideration of ready alternatives is not a "least restrictive alternative" test, the fact that other prisons in the state employ different delousing procedures does not alone demonstrate that Defendant's delousing policy is an exaggerated response to prison concerns, rendering it unconstitutional. Moreover, the policies of the other facilities referenced by Logory either afford inmates the option of applying a delousing solution or simply decline to engage in a delousing procedure altogether. (Pl.'s SMF ¶¶ 63-66.) Just as allowing inmates the option of treating themselves with delousing solution poses a substantial burden on Defendant as noted above, it would also pose more than a "*de minimis*" cost to the valid penological interest of SCCF of maintaining a healthy and sanitary facility by preventing outbreaks of lice. The same reasoning applies to the alternative policy of declining to implement a delousing procedure altogether. Therefore, in the absence of an alternative that fully accommodates inmates' rights at a *de minimis* cost to valid penological interests, Defendant's policy appears to be reasonable under the final *Turner* factor despite the fact that other facilities in the state employ different delousing procedures.

### 3. Plaintiff's Expert is Not Disqualified

The Court considered the expert testimony of Dr. Greenberg in deciding to grant Defendant's motion for summary judgment with respect to the constitutionality of the SCCF delousing policy under the Fourteenth Amendment and to deny Logory's motion for partial summary judgment. As such, Defendant's motion to for summary judgment is denied with respect to disqualification of Dr. Greenberg's expert testimony.

### D. Logory's Motion to Exclude Defendant's Expert

Logory moved to exclude testimony of Defendant's expert Anthony Pizon, M.D. on July 23, 2013 on the basis that he fails to exhibit the proper qualifications to discuss appropriate procedures at Defendant's correctional facility. Because the Court will grant Defendant's motion for summary judgment without relying on this testimony, Logory's motion to exclude testimony of Defendant's expert will be denied as moot.

### E. Defendant's Motion to Decertify Class

Because the Court will grant summary judgment for Defendant with respect to the constitutionality of SCCF's delousing policy, Defendant's motion to decertify class will be denied as moot.

### CONCLUSION

For all the above reasons, Defendant's motion for summary judgment (Doc. 77) will be granted with respect to the constitutionality of the delousing policy and denied with respect to disqualification of Logory's expert witness. Logory's partial motion for summary judgment (Doc. 80) will be denied. Logory's motion to exclude the expert testimony of Dr. Pizon (Doc. 88) and Defendant's motion to decertify class (Doc. 93) will be denied as moot.

An appropriate Order follows.


 September 13, 2013                             /s/ A. Richard Caputo
Date                                        A. Richard Caputo
                                            United States District Judge